IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SUNOCO, INC. (R&M) | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| GLOBAL RECYCLING & DEMOLITION, | : | |
| LLC, d/b/a GLOBAL DEMOLITION & | : | |
| RECYCLING, LLC, ET AL. | : | NO. 13-4351 |

### MEMORANDUM

**Padova, J.**                                                                                               May 21, 2014

      This is a breach of contract action arising from Defendants' failure to pay Plaintiff, Sunoco, Inc. (R&M) ("Sunoco"), for the demolition, removal and salvage of oil tanks located at three of Sunoco's sites in Oklahoma. Before the Court is Defendants' Motion to Set Aside Default Judgment Pursuant to Federal Rule of Civil Procedure 60(b). For the following reasons, the Motion is granted.

**I.     FACTUAL AND PROCEDURAL BACKGROUND**

      The Complaint alleges that Defendant Global Recycling & Demolition, LLC ("Global"), is a demolition contractor with experience "in the demolition, removal and scrap value of large oil tanks and similar structures located [in] refineries and other industrial sites." (Compl. ¶ 3.) Defendant Albert Arillotta is the owner and president of Global. (Id. ¶ 5.) On September 20, 2012, Sunoco and Global entered into Field Services Contract No. CW43300 (the "Contract"), whereby Global agreed to demolish, remove, and salvage oil tanks located at three Sunoco sites in Oklahoma. (Id. ¶ 8.) Global guaranteed in the Contract that its demolition costs would be $180 per ton, that the scrap value of the ferrous material to be scrapped would be $350 per gross ton, and that a minimum of 3,000 gross tons of ferrous material would be scrapped. (Id ¶ 11.) Global further guaranteed payment to Sunoco of at least $510,000 for the materials removed

from the Sunoco sites. (Id. ¶ 12.) The Contract also provides that, if Global defaults, the full contract price of $510,000 would immediately become due and payable to Sunoco. (Id. ¶ 13.) The Contract further required Global to make an initial payment of $153,000 to Sunoco at the time it executed the Contract. (Id. ¶ 14.)

Global failed to make the initial payment to Sunoco, and Mr. Arillotta asked Sunoco to modify the compensation terms and payment schedules in the Contract. (Id. ¶¶ 14-15.) Sunoco and Global subsequently entered into the First Amendment to Field Services Contract No. CW43300 (the "First Amendment"). (Id. ¶ 16.) Under the First Amendment, Global's guaranteed scrap value was reduced to $300 per gross ton up to 3,200 gross tons scrapped, with a guaranteed minimum payment to Sunoco of $360,000. (Id. ¶ 19.) Global also agreed, in the First Amendment, to make five successive $72,000 payments starting on December 14, 2012 and ending on January 11, 2013. (Id. ¶ 21.) The First Amendment further provides that if Global defaults, the original minimum payment obligation of $510,000 would be reinstated and become immediately due and payable. (Id. ¶ 22.)

Global began demolition at Sunoco's Cromwell site on November 26, 2012. (Id. ¶ 23.) Global demolished and removed all of the Cromwell tanks and completed performance on January 31, 2013. (Id. ¶¶ 24-25.) That the same time, Global failed to make any of the scheduled payments set forth in the First Amendment. (Id. ¶ 27.) Mr. Arillotta attempted to excuse Global's failure to make the required payments by telling Sunoco that the payments had been delayed because he had been undergoing cancer treatments and surgery, and had been unable to travel to Maryland (Global's principal place of business) to issue the checks (Id. ¶¶ 2, 28.) Global and Mr. Arillotta nevertheless sold the scrapped materials from the Cromwell site for at least $342,557. (Id. ¶¶ 31-32.) Two days after Global removed all of the scrapped

material from Sunoco's Cromwell site, Mr. Arillotta informed Sunoco that Global would not pay Sunoco any portion of the amounts it owed Sunoco. (Id. ¶ 33.) Sunoco hired a replacement contractor to complete Global's performance on the remaining two sites. (Id. ¶ 34.) Global refused Sunoco's subsequent demands for payment. (Id. ¶ 35.)

The Complaint asserts a claim against Global for breach of contract for which it seeks damages of $523,012 (Count I). The Complaint also asserts a claim against Global for unjust enrichment/quantum meruit for which it seeks damages of $231,000 (Count II). The Complaint asserts an additional claim against Global and Mr. Arillotta for misrepresentation/fraud, for which it seeks damages of $523,012 (Count IV).[1]

## II. PROCEDURAL HISTORY

The Complaint was filed on July 26, 2013. On October 9, 2013, Patrick Henigan, Esquire filed a Notice of Appearance on behalf of Global. One week later, on October 16, 2013, Mr. Henigan filed a Notice of Appearance on behalf of Mr. Arillotta as well. That same day, Mr. Henigan filed a Motion to Dismiss Counts III and IV of the Complaint on behalf of Global. On December 17, 2013, we granted the Motion to Dismiss as to Count III, but denied the Motion as to Count IV.

On November 14, 2013, Sunoco filed a Request for Default, seeking the entry of default against Mr. Arillotta for failing to answer or otherwise respond to the Complaint. On November 27, 2013, we denied the Request for Entry of Default because Sunoco had not served Mr. Arillotta with a summons as required by Rule 4 of the Federal Rules of Civil Procedure.

---

[1]As explained below, we dismissed Count III of the Complaint on December 17, 2013.

In the meantime, on November 7, 2013, Mr. Henigan filed a Motion to Withdraw as Counsel, seeking to withdraw as counsel for both Defendants because they had not paid Mr. Henigan all of the monies they owed him. We held a Hearing on that Motion on December 17, 2013, and granted the Motion, giving Defendants 30 days to find other counsel to represent them in this action, and staying all proceedings in this case for 30 days.

To this day, neither Global nor Mr. Arillotta has filed an Answer to the Complaint. On January 23, 2014, Sunoco filed Requests for Default against Global and Mr. Arillotta, and the Clerk of Court entered defaults on the docket that same day. On February 19, 2014, Sunoco filed Requests for Default Judgment against both Global and Mr. Arillotta. The Clerk entered Judgment in favor of Sunoco and against both Defendants in the amount of $523,012.00, that same day. On March 3, 2014, Sunoco submitted a Bill of Costs, seeking $400 for filing fees. On April 1, 2014, Charles V. Curley, Esquire filed a notice of appearance on behalf of Mr. Arillotta and Global, and at the same time filed the instant Motion to Set Aside Default Judgments. Sunoco filed a response to the Motion to Set Aside Default Judgments on April 10, 2014. We held a Hearing on the Motion on May 8, 2014.

## III. LEGAL STANDARD

Defendants have moved to set aside the default judgments entered against them pursuant to Federal Rule of Civil Procedure 60(b), which provides that "the court may relieve a party . . . from a final judgment . . . for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect . . . ." Fed. R. Civ. P. 60(b)(1). "A court ruling on a motion to set aside a default judgment under Rule 60(b)(1), 'must consider the following three factors: (1) whether the plaintiff will be prejudiced; (2) whether the defendant has a meritorious defense; and (3)

4

whether the default was the result of the defendant's culpable conduct.'" In re Subramanian, 245 F. App'x 111, 115 (3d Cir. 2007) (quoting Gold Kist, Inc. v. Laurinburg Oil Co., Inc., 756 F.2d 14, 19 (3d Cir. 1985)).  The most important factor is "whether the defendant has a meritorious defense."  Id. (citing Resolution Trust Corp. v. Forest Grove, 33 F.3d 284, 288 (3d Cir. 1994)).  The Third Circuit has explained as follows:  "'[A] defendant does not have the right to have a default judgment set aside automatically upon alleging a defense.  Rather, we imposed a more stringent standard which requires that a defendant seeking to set aside a default judgment set forth with some specificity the grounds for his defense.  The court must then evaluate that defense to determine whether it is meritorious.'"  Id. (alteration in original) (quoting Harad v. Aetna Cas. & Sur. Co., 839 F.2d 979, 982 (3d Cir. 1988)).  Default judgments are generally disfavored.  Budget Blinds, Inc. v. White, 536 F.3d 244, 258 (3d Cir. 2008) (citing United States v. $55,518.05 in U.S. Currency, 728 F.2d 192, 194-95 (3d Cir. 1984)); see also $55,518.05 in U.S. Currency, 928 F.2d at 194-95 (stating that "this court does not favor entry of defaults or default judgments. We require doubtful cases to be resolved in favor of the party moving to set aside the default judgment so that cases may be decided on their merits" (quotation and citations omitted)).

IV.  DISCUSSION

Defendants ask that we set aside the default judgments entered against them on the ground that they were unable to obtain counsel to represent them within the 30 days that we allotted on December 17, 2013, because Mr. Arillotta, who has been battling kidney cancer at Massachusetts General Hospital, has not been physically able to give this case the attention it needs and has not been able to travel to meet with an attorney.  Defendants maintain that Sunoco

will not be prejudiced if the default judgments are set aside, that they have meritorious defenses to Sunoco's claims, and that their failure to timely answer the Complaint was not culpable.

      A.      <u>Prejudice to Plaintiff</u>

Sunoco has the burden of establishing that it would be prejudiced by our setting aside the default judgments by "demonstrating that [its] claim 'would be materially impaired because of the loss of evidence, an increased potential for fraud or collusion, substantial reliance on the entry of default, or other substantial factors.'" <u>U.S. ex rel. Constr. Hardware, Inc. v. Patterson</u>, Civ. A. No. 12-3285, 2013 WL 5356851, at *2 (E. D. Pa. Sept. 24, 2013) (quoting <u>Dizzley v. Friends Rehab. Program, Inc.</u>, 202 F.R.D. 146, 148 (E.D. Pa. 2001)). "Delays in Plaintiff's potential recovery or potential expenses incurred from litigating the matter on the merits do not constitute the kind of prejudice the Court should consider in deciding whether to set aside an entry of default." <u>Id.</u> (citing <u>GE Med. Sys. Info. Techs., Inc. v. Ansar, Inc.</u>, Civ. A. No. 04-2775, 2004 WL 2988513, at *2 (E.D. Pa. Dec. 23, 2004)). Sunoco has not asserted that it would be prejudiced if we set aside the default judgments. Consequently, we conclude that this factor weighs in favor of setting aside the default judgments.

      B.      <u>Meritorious Defenses</u>

As we noted, <u>supra</u>, the most important factor in our determination of whether to set aside the default judgments is whether Defendants have alleged facts that could constitute meritorious defenses to Sunoco's causes of action. <u>Resolution Trust Corp. v. Forest Grove, Inc.</u>, 33 F.3d 284, 288 (3d Cir. 1994). "The showing of a meritorious defense is accomplished when 'allegations of defendant's answer, if established on trial, would constitute a complete defense to the action.'" <u>$55,518.05 in U.S. Currency</u>, 728 F.2d at 195 (quoting <u>Tozer v. Charles H. Krause Milling Co.</u>, 189 F.2d 242, 244 (3d Cir. 1951); and citing <u>Farnese v. Bagnasco</u>, 687 F.2d 761,

764 (3d Cir. 1982)). It is not enough for Defendants to simply deny the factual allegations in the Complaint. Rather, Defendants must allege facts, which, if established, would enable them to prevail in the action. Id. at 196.

Defendants have not provided us with their proposed Answer to the Complaint. However, they have described their defenses to Sunoco's claims in their Motion to Set Aside Default Judgments, the Brief they filed in support of that Motion, and on the record during the May 8, 2014 Hearing. Defendants contend that Sunoco's claims against Mr. Arillotta individually should be dismissed because Sunoco's contract was with Global and Mr. Arillotta acted as the President of Global in his dealings with Sunoco. (Defs.' Mot. ¶10; Defs.' Br. at 3.) Defendants further contend that they entered into the Contract in reliance on a serious and fundamental misstatement made by Sunoco regarding the size of the tanks that Global agreed to salvage. (Defs.' Mot. ¶ 9.) During our May 8, 2014 Hearing, Defendants indicated that they relied on the Tank Specifications and Pricing Summary contained in Exhibit C to the Contract as constituting the basis for their valuation of the scrap. (See Contract, Ex. C.) Defendants further explained that Sunoco represented in the Tank Specifications and Pricing Summary that the seven tanks located at the Cromwell site had a total weight of 1925 gross tons. (See id.) However, when Global demolished and removed those tanks, they weighed approximately 1100 gross tons. In addition, Mr. Arillotta has certified to the Court that he has lost more than $180,000 as a result of Sunoco's misrepresentation as to the size of the tanks to be scrapped. (Arillotta Cert. ¶ 13.) We therefore conclude that Defendants have asserted facts that could constitute meritorious defenses to Sunoco's claims against both Global and Mr. Arillotta. We further conclude, accordingly, that this factor weighs in favor of setting aside the default judgments.

C.      <u>Culpable Conduct</u>

"Conduct is culpable when the conduct leading to entry of default was 'willful, intentional, reckless or in bad faith.'" <u>Constr. Hardware</u>, 2013 WL 5356851, at *3 (quoting <u>Momah v. Albert Einstein Med. Ctr.</u>, 161 F.R.D. 304, 308 (E.D. Pa. 1995)). Defendants maintain that they did not engage in culpable conduct with respect to this litigation because their failure to timely retain new counsel to represent them in this action resulted from Mr. Arillotta's need to obtain medical care. Mr. Arillotta states in his Certification that he was diagnosed with renal cell carcinoma in August 2012. (Arillotta Cert. ¶ 2.) He has been under constant medical care and treatment at Massachusetts General Hospital since that time. (<u>Id.</u> ¶ 3.) Mr. Arillotta takes "chemotherapy every day and other medication to try to help with nausea." (<u>Id.</u> ¶ 4.) He also sees his doctor twice a month and has a bone infusion once a month, which procedure renders him unable to function for a few days. (<u>Id.</u>) In addition, he had a procedure in March that left him bedridden for almost three weeks, and his doctor has prohibited him from traveling. (<u>Id.</u> ¶¶ 8-9.) Mr. Arillotta tried to obtain a new attorney after he learned of our December 17, 2013 Order, but found it difficult. (<u>Id.</u> ¶ 7.) He has now retained Mr. Curley, who has agreed to travel to Massachusetts to meet with him. (<u>Id.</u> ¶ 11.) Defendants have also submitted two notes from Mr. Arillotta's treating physician, Dr. Phillip J. Saylor, describing his condition and treatment. (<u>See</u> Letters attached to Arillotta Cert.) We conclude, based on this evidence, that Defendants' conduct, which led to the entry of the default judgments, was not "willful, intentional, reckless or in bad faith." <u>Constr. Hardware</u>, 2013 WL 5356851, at *3 (quotation omitted). Hence, we further conclude that this factor weighs in favor of setting aside the default judgments.

## V. CONCLUSION

We have weighed the three factors that we must consider in ruling on a motion to set aside default judgments pursuant to Federal Rule of Civil Procedure 60(b)(1): "(1) whether the plaintiff will be prejudiced; (2) whether the defendant has a meritorious defense; and (3) whether the default was the result of the defendant's culpable conduct." In re Subramanian, 245 F. App'x at 115 (quotation omitted). All three of these factors weigh in favor of setting aside the default judgments entered against Defendants in this case. The Motion to Set Aside Default Judgments is, therefore, granted. Defendants shall answer the Complaint within ten days of the date of this Memorandum and the accompanying order.

BY THE COURT:

/s/ John R. Padova

_____

John R. Padova, J.